Frank **BUONO**, Plaintiff,

v.

Gale **NORTON**, Jonathan **Jarvis**, and Mary **Martin**, Defendants.

No. EDCV 01–216RTSGLX.

United States District Court, C.D. California, Eastern Division.

April 8, 2005.

Peter J. Eliasberg, Catherine D. Whiting, Mark D. Rosenbaum, ACLU Foundation of So. California, Los Angeles, CA, for Plaintiffs.

Thomas L. Sansonetti, Assistant Attorney General, Environmental & Natural Resources Division, Larry J. Bradfish, Attorney, Office of the Solicitor, U.S. Department of the Interior, Oakland Field Office, Oakland, Charles R. Shockey, Attorney, U.S. Department of Justice, Environment & Natural Resources Division, General Litigation Section, Sacramento, CA, for Respondent.

ORDER 1) GRANTING PLAINTIFF'S MOTION TO ENFORCE PERMANENT INJUNCTION, 2) DENYING PLAINTIFF'S MOTION TO MODIFY THE INJUNCTION AS MOOT, AND 3) PERMANENTLY ENJOINING DEFENDANTS' IMPLEMENTATION OF THE PROVISIONS OF SECTION 8121 OF PUBLIC LAW 108–87

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, has read and considered plaintiff Frank Buono ("Plaintiff")'s motion to enforce or, in the alternative, modify the permanent injunction ("motion"), defendants Gale Norton, Secretary of the Interior, Jonathan Jarvis, Regional Director of the Pacific West Region of the Department of Interior, and Mary Martin, Superintendent of the Mojave Desert Preserve (collectively, "Defen-

dants")' response,[1] and Plaintiff's reply.[2] Based on such consideration, the court concludes as follows:

# I.

## BACKGROUND

On July 24, 2002, this court held that a Latin cross situated upon a prominent rock on federal land in the Mojave National Preserve ("the Preserve"), which the government[3] had designated as a national monument for World War I veterans during this litigation, violated the Establishment Clause of the First Amendment. *Buono v. Norton*, 212 F.Supp.2d 1202, 1217 (C.D.Cal.2002). The court entered a judgment that "Defendants, their employees, agents, and those in active concert with Defendants, are hereby permanently restrained and enjoined from permitting the display of the Latin cross in the area of Sunrise Rock in the Mojave National Preserve."

Defendants appealed to the Ninth Circuit Court of Appeals ("Ninth Circuit"), which stayed this court's order "permanently enjoining display of the cross to the extent that the order required the immediate removal or dismantling of the cross" but "did not stay alternative methods of compliance with" the order. *Buono v. Norton*, 371 F.3d 543, 545 n. 1 (9th Cir. 2004). During the pendency of appeal, the Department of Interior covered the cross first with a tarpaulin secured by a lock and later with a large plywood box. The Ninth Circuit affirmed this court's judgment on June 7, 2004. *Id.* at 550. The cross remains covered by the box.

Prior to the Ninth Circuit's decision, Congress passed, and the President signed, the Department of Defense Appropriations Act of 2004 ("DDAA"), Pub.L. No. 108–87, 117 Stat. 1054 (2003). Section 8121 of the DDAA ("Section 8121") "requires the Secretary of the Interior to transfer the land on which the cross sits to the local Veterans of Foreign Wars Post in exchange for a privately-owned five-acre parcel elsewhere in the Preserve." *Buono*, 371 F.3d at 545. The Ninth Circuit held that Section 8121 did not moot the appeal, but left "for another day" the question "whether a transfer completed under Section 8121 would pass constitutional muster." *Id.*

For this court, that day is today. Plaintiff has brought a motion requesting that the court "either hold that the transfer violates the current injunction, or modify that injunction to prohibit the land transfer because it violates the Establishment Clause."

# II.

## ANALYSIS

### A. Defendants' Requests for Delay

Defendants request that this court delay ruling on Plaintiff's motion until the Supreme Court provides additional guidance in two pending cases involving displays of the Ten Commandments on public property. *See Van Orden v. Perry*, 351 F.3d 173 (5th Cir.2003), *cert granted*, —— U.S. ——, 125 S.Ct. 346, 160 L.Ed.2d 220 (2004) (No. 03–1500); *ACLU v. McCreary County*, 354

---

1. Defendants are only being sued in their official capacities.

2. The notice of motion stated "Plaintiffs" were bringing this motion, but it appears from footnote 3 of Plaintiff's points and authorities that plaintiff Allen Schwartz died before the motion was filed. Consequently,

the court will use the language "Plaintiff," which refers only to Frank Buono.

3. For the purposes of this order, "the government" refers to the executive and legislative branches of the federal government.

F.3d 438 (6th Cir.2003), *cert. granted,* —— U.S. ——, 125 S.Ct. 310, 160 L.Ed.2d 221 (2004) (No. 03–1693). These cases are inapposite to the instant motion because the issue here is not whether the display of the Latin cross on federal land violates the Establishment Clause. Both this court and the Ninth Circuit answered that question in the affirmative. *Buono,* 212 F.Supp.2d at 1217; *Buono,* 371 F.3d at 550. Rather, the issue is whether the land transfer directed by Section 8121 violates the permanent injunction or is itself an unconstitutional violation of the First Amendment Establishment Clause. Moreover, as Plaintiff points out, if this court were to delay ruling on Plaintiff's motion each time the Supreme Court grants certiorari on an Establishment Clause case, this motion will never be finally resolved.

Defendants also request that this court postpone ruling on this motion for the "additional six months to two years" that it will take them to complete the land transfer. Section 8121, which was passed on September 30, 2003, expressly requires the Secretary of the Interior to undertake the land transfer. There is no doubt that the land transfer will go forward and, according to the government, it is already in progress. The court has examined Section 8121 and concludes that it provides sufficient information from which to determine whether the land transfer is a bona fide attempt to cure Defendants' violation of the Establishment Clause by maintaining the Latin cross on Preserve land or an improper attempt to evade the permanent injunction. As a consequence, the court does not need to delay its decision to allow for the administrative tasks necessary for the completion of a potentially invalid land transfer.

### B. Validity of Land Transfer

■ Plaintiff contends that the land transfer directed by Section 8121 is a sham by Defendants to preserve the Latin cross in the Preserve. Defendants contend that the transfer of the land on which the cross stands to private ownership will remedy the Establishment Clause violation.

The Seventh Circuit Court of Appeals ("Seventh Circuit") has held that, "[a]bsent unusual circumstances," the sale of public property containing an unconstitutional religious display "is an effective way for a public body to end its inappropriate endorsement of religion." *Freedom from Religion Found., Inc. v. City of Marshfield, Wisconsin,* 203 F.3d 487, 491, 492 (7th Cir.2000) (holding that the sale of 0.15 acres of city park land containing a statute of Jesus Christ to a private organization "validly extinguished any government endorsement of religion" because there were not unusual circumstances);[4] *see also Mercier v. Fraternal Order of Eagles,* 395 F.3d 693, 702–04 (7th Cir.2005) (holding that the sale of 440 square feet of a city park containing a Ten Commandments monument to a private organization was valid because there were no unusual circumstances). Since "adherence to a formalistic standard invites manipulation," a court must "look to the substance of the transaction as well as its form to determine whether government action endorsing religion has actually ceased." *Freedom from Religion Found., Inc.,* 203 F.3d at 491.

■ Unusual circumstances that will invalidate a sale include (1) "a sale to a straw purchaser" leaving the public entity "with continuing power to exercise the duties of ownership," (2) a sale that does not comply with applicable law governing the sale of

---

**4.** The display was still unconstitutional in that case because the private organization's land was "visually indistinguishable" from the city's land. *Id.* at 495.

land by a public entity, or (3) "a sale well below fair market value resulting in a gift to a religious organization." *Mercier*, 395 F.3d at 702; *see also Freedom from Religion Found., Inc.*, 203 F.3d at 492. All of these unusual circumstances need not exist to invalidate a sale and a court may also consider the existence of other unusual circumstances in this analysis. *See Mercier*, 395 F.3d at 702, 703–04.

The court finds this analytical framework helpful and will apply it to the proposed Section 8121 mandated land transfer in the instant case. The pertinent question is whether the transfer of the acre of federal land on Sunrise Rock in the Preserve containing the Latin cross to the Veterans of Foreign War ("VFW") in exchange for other private land in the Preserve presumably owned by Mr. and Mrs. Henry Sandoz is characterized by any unusual circumstances. In particular, the court will examine the circumstances surrounding the government's retaining certain property rights over the site containing the cross ("subject property") after the proposed transfer, the method for effectuating the land transfer, and the history of the government's efforts to prevent the removal of the Latin cross.[5]

### 1. Continuing Property Rights in the Subject Property

It is clear from Section 8121 and its various subdivisions that, despite the transfer, the government will retain important property rights in the subject property and will continue to exercise substantial control over the property. Section 8121(e) legislates a reversionary clause in the property exchange transaction, providing that the transfer will be "subject to the condition that the recipient maintain the conveyed property as a" World War I memorial and that "[i]f the Secretary determines that the conveyed property is no longer being maintained as a war memorial, the property shall revert to the ownership of the United States." In effect, the government has tightly restricted the VFW's use of the subject property for one purpose and, more importantly, has reserved the right to reassert ownership and repossess the subject property any time the Secretary of the Interior makes the discretionary determination that the VFW is not adequately maintaining the Latin cross as a World War I memorial. Such a reversionary clause defeats Defendants' contention that the government has given up control over the subject property. *See Hampton v. City of Jacksonville*, 304 F.2d 320, 322–23 (5th Cir.1962) (holding that where the city's conveyance of a segregated golf course to private parties included a reversionary clause, which provided that the city could retake the property if it were no longer used for a golf course, the city had "complete present control" over the golf course and state action existed under the Fourteenth Amendment); *see also Downs v. Sawtelle*, 574 F.2d 1, 8 (1st Cir.1978); *Eaton v. Grubbs*, 329 F.2d 710, 714 (4th Cir.1964).

---

**5.** Section 8121(c) requires that "[t]he value of the properties to be exchanged under this section shall be equal or equalized as provided in subsection (d)," which provides for a "cash equalization payment" should one of the properties be appraised at a higher value than the other. Although it is somewhat strange for the government to exchange one acre on Sunrise Rock for five acres elsewhere in the Preserve, which suggests, as Plaintiff contends, that the five acres are less desirable, the cash equalization provision negates any threat that the government will be giving the land to the VFW "well below fair market value." *Mercier*, 395 F.3d at 702. As noted above, however, the absence of one unusual circumstance does not negate the existence of the other unusual circumstances discussed *infra*.

Furthermore, Section 8121(a) provides that "[n]otwithstanding the conveyance of the property under this subsection, the Secretary shall continue to carry out the responsibilities of the Secretary under" Section 8137 of the Department of Defense and Emergency Supplemental Appropriations for Recovery From and Response to Terrorist Attacks on the United States Act of 2002 ("Supplemental Appropriations Act"), Pub.L. No. 107–117, 115 Stat. 2230 (2002). Section 8137 of the Supplemental Appropriations Act designated the Latin cross on the subject property as a national World War I monument and required the Secretary of the Interior "to acquire a replica of the original memorial plaque and cross"[6] with "not more than $10,000 of funds available for the administration of the Mojave National Preserve" and "to install the plaque in a suitable location on the grounds of the memorial," thus giving the Secretary access to the subject property in the form of an easement or license for a particular purpose.

The designation of the Latin cross in the Preserve as a sectarian memorial by the government, as well as the government's use of $10,000 of federal funds to put a new plaque on Sunrise Rock and acquire a replica of the original cross, demonstrate that the government is intent on preserving the Latin cross, the primary symbol of Christianity, in the Preserve. The government's direction that the Secretary of the Interior continue to carry out her responsibilities under Section 8137 of the Supplemental Appropriations Act in spite of the land transfer, as required by Section 8121(a), and the reversionary clause authorized in Section 8121(e), compel the conclusion that the government reserved its rights to remain actively involved with the Latin cross, even though the VFW has ownership of the subject property.

Given the government's continuing control over the Latin cross, it is significant that the subject property, including the Latin cross, is being transferred to the organization (VFW) that originally installed the cross and desires its continued presence in the Preserve, and that the private land being exchanged for the federal property is owned by a couple (Mr. and Mrs. Sandoz) who has actively sought to keep the Latin cross on Sunrise Rock. The direct land transfer to the VFW "to the exclusion of any other purchasers of or bidders for the land," *Murphy v. Bilbray*, 1997 WL 754604, at *11 (S.D.Cal. Sept. 18, 1997), demonstrates that the government's apparent endorsement of a particular religion has not actually ceased. *Cf. Mercier*, 395 F.3d at 702–03 (upholding the sale of 440 square acres of city park land containing a Ten Commandments monument in part because the government had terminated its relationship with the land and transferred "the traditional duties of ownership" to a private organization).[7] The

---

**6.** The cross had first been erected in 1934 by the VFW as a memorial for World War I.

**7.** In *Mercier*, 395 F.3d at 702–04, the Seventh Circuit in upholding the sale to a private organization of the city park land containing the Ten Commandments monument found it important that there was a "somewhat extensive effort made to distinguish the now-private property from the Park." While in *Mercier* "[a]ny reasonable person walking past the Monument" would "quickly recognize" that it is not on city property because of the two

fences surrounding it and the six signs disclaiming any endorsement of it by the city, *id.* at 703–04, our case is distinguishable. The Latin cross atop Sunset rock "is visible to vehicles traveling on the road from a distance of approximately 100 yards," *Buono*, 212 F.Supp.2d at 1205, and it is not clear how any fences and sign disclaimers like those in *Mercier* would prompt reasonable drivers viewing the cross from afar to "quickly recognize" that, unlike the surrounding 1.6 million acres, the one acre containing the cross was actually private land. *See Murphy*, 1997 WL 754604,

court can only conclude that, under these circumstances, the VFW is "a straw purchaser." *Id.* at 702.

## 2. Compliance with Applicable Law

Another unusual circumstance in this case is the nature of the proposed transfer of the subject property. Under normal circumstances, the transfer of land over which the National Park Service ("NPS") has jurisdiction takes place pursuant to 16 U.S.C. § 4601–22(b) ("Section 4601–22(b)"), which gives the Secretary of the Interior authority to exchange federal land for non-federal land. Here, however, the land transfer decision did not occur through the normal administrative process by which the Secretary of the Interior exercises her discretion pursuant to Section 4601–22(b). Instead, the land transfer decision was made directly by the government and authorized by a provision buried in a defense appropriations bill. While not dispositive by itself, this unusual circumstance adds support to Plaintiff's contention that the government is seeking to evade this court's injunction with the land transfer. *Cf. Freedom from Religion Found., Inc.,* 203 F.3d at 492 (finding no unusual circumstances where the sale of 0.15 acres of city park land containing a statute of Jesus Christ "complied with the applicable Wisconsin law governing the sale of land by municipalities").

## 3. History of the Government's Preservation Efforts

The history of the government's efforts to preserve and maintain the Latin cross on the subject property is yet another unusual circumstance in this case. *See*

*Santa Fe Ind. Sch. Dist. v. Doe,* 530 U.S. 290, 309–310, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000) (examining the history of the school board's policy of prayer at football games to determine whether the purpose of its current policy of allowing student-initiated prayer at football games "was to preserve a popular 'state-sponsored religious practice.' ") (*quoting Lee v. Weisman,* 505 U.S. 577, 596, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)).

In 2000, after the American Civil Liberties Union threatened to sue to remove the Latin cross, Congress passed, and the President signed, the Consolidated Appropriations Act, Pub.L. No. 106–554, 114 Stat. 2763 (2000), which included a provision, Section 133, that prevented the use of any federal funds for the removal of the Latin cross. Then, in early 2002, Congress passed, and the President signed, the Supplemental Appropriations Act, which contained a provision, Section 8137, designating the subject property, including the Latin cross, as a national World War I monument and appropriating up to $10,000 in federal funds to obtain a replica of the original cross and original plaque that were placed on the land in 1934, and to install the plaque on the property. Later in 2002, after this court had enjoined the display of the Latin cross, Congress passed, and the President signed, the Department of Defense Appropriations Act of 2003, Pub.L. No. 107–248, 116 Stat. 1519 (2002), which had a provision, Section 8056(b), that prohibited the use of federal funds to dismantle any World War I memorials. Then, while the case was on appeal to the Ninth Circuit, Congress passed,

at *11 (invalidating the city's first attempt to sell to a private organization 222 square feet of land containing a cross atop Mt. Soledad, which the Ninth Circuit held to violate the No Preference Clause of the California Constitution in a previous case, in part because visi-

tors would not be able to differentiate that "small plot of land" from the "approximately 170 acres of municipally owned and maintained park land" despite the existence of "a small disclaimer plaque").

and the President signed, the DDAA, which included Section 8121 directing the transfer of the subject property to a private organization but maintaining effective government control over the use of that property by requiring the Latin cross to remain thereon.

In light of this history, it is evident to the court that the government has engaged in herculean efforts to preserve the Latin Cross on federal land and that the proposed transfer of the subject property can only be viewed as an attempt to keep the Latin cross atop Sunrise Rock without actually curing the continuing Establishment Clause violation by Defendants. The court finds that Section 8121 and its pertinent subdivisions regarding a transfer of the subject property by Defendants to the VFW violates this court's judgment ordering a permanent injunction.

**4. Remedy**

Having considered the aforementioned unusual circumstances, the court concludes that the transfer of the Preserve land containing the Latin Cross, which as "[a] sectarian war memorial carries an inherently religious message and creates an appearance of honoring only those servicemen of that particular religion," *Ellis v. City of La Mesa*, 990 F.2d 1518, 1527 (9th Cir.1993), is an attempt by the government to evade the permanent injunction enjoining the display of the Latin Cross atop Sunset Rock. As a result, the court concludes that the proposed transfer of the subject property to the VFW is invalid. *See Paulson v. City of San Diego*, 294 F.3d 1124, 1133 (9th Cir.2002) (en banc) (invalidating the city's second attempt to sell to a private organization 0.509 acres of land containing a cross on Mt. Soledad, which the Ninth

Circuit held to violate the No Preference Clause of the California Constitution in a previous case, because the city's bidding process had the effect of skewing the outcome of the sale in favor of sectarian organizations).[8]

The court will therefore grant Plaintiff's motion to enforce the permanent injunction and deny Plaintiff's alternative motion to amend the injunction as moot.

## III.

### *DISPOSITION*

ACCORDINGLY, IT IS ORDERED THAT:

1) Plaintiff Frank Buono's motion to enforce the permanent injunction is GRANTED;

2) Plaintiff Frank Buono's motion to amend the permanent injunction is DENIED as moot;

3) Defendants Gale Norton, Jonathan Jarvis, and Mary Martin, their agents, employees, successors, assignees, or anyone acting in concert with them are permanently enjoined from implementing the provisions of Section 8121 of Public Law 108–87; and

4) Defendants Gale Norton, Jonathan Jarvis, and Mary Martin are hereby ordered to comply forthwith with the judgment and permanent injunction entered by this court on July 24, 2002.

---

**8.** Since the court has found that the proposed transfer is an unlawful attempt to evade the permanent injunction, it need not consider Plaintiff's other contention that the land transfer itself is an independent violation of the Establishment Clause.