Justice Scalia,
with whom Justice Thomas joins, concurring in the judgment.
I agree with the plurality that the Court of Appeals erred in affirming the District Court’s order enjoining the transfer of the memorial to the Veterans of Foreign Wars (VFW). My reason, however, is quite different: In my view we need not — indeed, cannot — decide the merits of the parties’ dispute, because Frank Buono lacks Article III standing to pursue the relief he seeks. The District Court had no power to award the requested relief, and our authority is limited to “ ‘announcing the fact and dismissing the cause.’ ” Steel Co. v. Citizens for Better Environment, 523 U. S. 83, 94 (1998) (quoting Ex parte McCardle, 7 Wall. 506, 514 (1869)).
The plurality is correct that Buono's standing to obtain the original injunction is not before us. See ante, at 711-712.[1] *730 Nor is Buono’s standing to request enforcement of the original injunction at issue. If he sought only to compel compliance with the existing order, Article III would not stand in his way.
As the plurality all but admits, however, the relief Buono requests and the District Court awarded in this proceeding is not enforcement of the original injunction but expansion of it. See ante, at 719. The only reasonable reading of the original injunction, in context, is that it proscribed the cross’s display on federal land. Buono’s alleged injuries arose from the cross’s presence on public property, see App. 50,59, and the injunction accordingly prohibited the Government, its “employees, agents, and those in active concert with [them] . . . from permitting the display of the Latin cross in the area of Sunrise Rock in the Mojave National Preserve.” App. to Pet. for Cert. 146a. Barring the Government from “permitting” the cross’s display at a particular location makes sense only if the Government owns the location. As the proprietor, it can remove the cross that private parties have erected and deny permission to erect another. But if the land is privately owned, the Government can prevent the cross’s display only by making it illegal Prohibitory legislation does not consist of a mere refusal to “per-mi[t],” nor is the enactment of legislation what the injunction commanded (a command that would raise serious First Amendment and separation-of-powers questions).[2]
*731 The District Court’s 2005 order purporting to “enforce” the earlier injunction went well beyond barring the display of the cross on public property. Buono v. Norton, 364 F. Supp. 2d 1175, 1182 (CD Cal. 2005). At Buono’s request, the court enjoined certain Government officials and “anyone acting in concert with them . . . from implementing the provisions of Section 8121 of Public Law 108-87,” the statutory provision enacted after the original injunction that directs the Executive Branch to transfer the memorial to the VFW. Ibid.
Because Buono seeks new relief, he must show (and the District Court should have ensured) that he has standing to pursue it. As the party invoking federal-court jurisdiction, Buono “bears the burden of showing that he has standing for each type of relief sought,” Summers v. Earth Island Institute, 555 U. S. 488, 493 (2009); see Los Angeles v. Lyons, 461 U. S. 95, 105 (1983). A plaintiff cannot sidestep Article Ill’s requirements by combining a request for injunctive relief for which he has standing with a request for injunctive relief for which he lacks standing. And for the same reason, a plaintiff cannot ask a court to expand an existing injunction unless he has standing to seek the additional relief.
Buono must therefore demonstrate that the additional relief he sought — blocking the transfer of the memorial to a private party — will “redress or prevent actual or imminently threatened injury to [him] caused by private or official violation of law.” Summers, supra, at 492. He has failed, how *732 ever, to allege any actual or imminent injury. To begin with, the predicate for any injury he might assert — that the VFW, after taking possession of the land, will continue to display the cross — is at this stage merely speculative.[3] Nothing in the statutes compels the VFW (or any future proprietor) to keep it up. The land reverts to the Government only if “the conveyed property is no longer being maintained as a war memorial,” Pub. L. 108-87, § 8121(e), 117 Stat. 1100, which does not depend on whether the cross remains.[4]
Moreover, Buono has not alleged, much less established, that he will be harmed if the VFW does decide to keep the cross. To the contrary, his amended complaint averred that “he is deeply offended by the display of a Latin Cross on government-owned property” but “has no objection to Christian symbols on private property.” App. 50. In a subsequent deposition he agreed with the statement that “[t]he only thing that’s offensive about this cross is that [he has] discovered that it’s located on federal land.” Id, at 85. And in a signed declaration several months later, he reiterated that although the “presence of the cross on federally owned land in the Preserve deeply offends [him] and impairs *733 [his] enjoyment of the Preserve,” he “ha[s] no objection to Christian symbols on private property.” Id., at 64-65. In short, even assuming that being “deeply offended” by a religious display (and taking steps to avoid seeing it) constitutes a cognizable injury, Buono has made clear that he will not be offended.[5]
These same considerations bear upon the plurality’s assertion that Buono has standing to “prevent the Government from frustrating or evading” the original injunction, ante, at 713. If this refers to frustration or evasion in a narrow sense, the injunction is in no need of — indeed, is insusceptible of — protection. It was issued to remedy the sole complaint that Buono had brought forward: erection of a cross on public land. And it was entirely effective in remedying that complaint, having induced Congress to abandon public ownership of the land. If meant in this narrow sense, the plurality’s assertion of a need to prevent frustration or evasion by the Government ignores the reality that the District Court’s 2005 order awarded new relief beyond the scope of the original injunction. The revised injunction is directed at Buono’s new complaint that the manner of abandoning public ownership and the nature of the new private ownership violate the Establishment Clause. Now it may be that a court has subject-matter jurisdiction to prevent frustration or evasion *734 of its prior injunction in a broader sense — that is, to eliminate an unconstitutional manner of satisfying that prior injunction. But it surely cannot do so unless it has before it someone who has standing to complain of that unconstitutional manner. If preventing frustration or evasion of an injunction includes expanding it to cover additional actions that produce no concrete harm to the original plaintiff, our standing law in this area will make no sense.
It is no answer that a district court has discretion to expand an injunction it has issued if it finds the existing terms are not fulfilling the original purpose. Doubtless it can do that, and is in that sense the master of its own injunctions. But whether the District Court abused that discretion by enlarging the injunction is beside the point. What matters is that it granted relief beyond the existing order, and that Buono must have had standing to seek the extension.
It also makes no difference that the District Court said it was merely enforcing its original injunction. The question is whether in fact the new order goes beyond the old one. If so, the court must satisfy itself of jurisdiction to award the additional relief — which includes making certain the plaintiff has standing. See Steel Co., 523 U. S., at 94. That is true whether the court revisits the injunction at a party’s request or on its own initiative; Article Ill’s ease-or-controversy requirement is not merely a prerequisite to relief, but a restraint on judicial power. See Summers, 555 U. S., at 492-493.[6]
*735 * * *
Keeping within the bounds of our constitutional authority often comes at a cost. Here, the litigants have lost considerable time and money disputing the merits, and we are forced to forgo an opportunity to clarify the law. But adhering to Article Ill’s limits upon our jurisdiction respects the authority of those whom the people have chosen to make and carry out the laws. In this case Congress has determined that transferring the memorial to private hands best serves the public interest and complies with the Constitution, and the Executive defends that decision and seeks to carry it out. Federal courts have no warrant to revisit that decision — and to risk replacing the people’s judgment with their own — unless and until a proper case has been brought before them. This is not it.

 The Court of Appeals’ conclusion that Buono had standing to seek the original injunction does not, however, control our decision here under the law-of-the-case doctrine. That doctrine comes into play only if an issue we are asked to resolve has already been decided in the same litigation. See Quern v. Jordan, 440 U. S. 332, 347, n. 18 (1979). In its earlier decision, the Ninth Circuit addressed only Buono’s standing to seek the original injunction barring the display of the cross on public land. See Buono v. Norton, 371 F. 3d 543, 546-548 (2004). It had no occasion to address his standing to seek an expansion of the injunction to bar a transfer en *730 abling the cross’s display on private property. Moreover, Buono failed to raise the issue in his brief in opposition to certiorari, and we may deem it waived. See this Court’s Rule 15.2; cf. Knowles v. Iowa, 525 U. S. 113, 116, n. 2 (1998).

 The principal dissent does not dispute that the original injunction did not require the Government to ban the cross’s display on private land, yet it insists that the injunction nonetheless forbade transferring the land to a private party who could keep the cross in place. Post, at 740-741 (opinion of Stevens, J.). But there is no basis in the injunction’s text for treating a sale of the land to a private purchaser who does not promise to take the cross down as “permitting” the cross’s display, when failing to *731 forbid the cross's presence on already-private land within the Mojave National Preserve would not be treated as such. The latter no less involves "allow[ing] the act or existence of” or “tolerat[ingl” the display of the cross. Webster’s New International Dictionary 1824 (2d ed. 1954). The principal dissent responds that in determining whether the transfer complies with the original injunction we “cannot start from a baseline in which the eross has already been transferred.” Post, at 741. But the effect of transferring the land to a private party free to keep the cross standing is identical, so far as the original injunction is concerned, to allowing a party who already owned the land to leave the cross in place.

 Buono argues that the Government’s continued supervision of the site, its reversionary interest in the property, and the memorial’s ongoing designation as a national memorial add to the Establishment Clause violation. Brief for Respondent 37-48. But those aspects would be irrelevant if the cross were no longer displayed.

 The principal dissent insists, post, at 738-739, n. 2, that it is clear the cross will remain because the VFW asserted in an amicus brief that it “intends to maintain and preserve the Veterans Memorial as a memorial to United States veterans,” and elsewhere referred to “the seven-foot-tall cross and plaque that comprise the Veterans Memorial,” Brief for VFW of the United States et al. as Amici Curiae 4, 7. But the group's stated intentions do not prove that the cross will stay put. The VFW might not follow through on its plans (this VFW post already became “defunct” once during this litigation, id,., at 34); it might move the cross to another private parcel and substitute a different monument on Sunrise Rock; or it might sell the land to someone else who decides to honor the dead without the cross.

 The principal dissent argues that despite these disclaimers in Buono’s complaint, deposition, and declaration, his real injury is his inability “to freely use the area of the Preserve around the cross because the Government’s unconstitutional endorsement of the cross will induce him to avoid the Sunrise Rock area.” Post, at 739, n. 2 (internal quotation marks and citation omitted). But the only “endorsement” of which Buono complained was “[t]he placement of the Cross on federally-owned land,” App. 59, whieh “offend[s]” him only because the property “is not open to groups and individuals to erect other freestanding, permanent displays,” id., at 50. Nothing in Buono’s complaint, deposition, or declaration establishes that he will be unable “to freely use the area of the Preserve” if Sunrise Rock is made private property and its new proprietor displays the cross.

 I agree with Justice Breyer that in interpreting an ambiguous injunction we should give great weight to the interpretation of the judge who issued it. Post, at 761-762 (dissenting opinion). But that does not mean we must accept any construction a district court places upon an order it has issued. Here there is no reasonable reading of the original injunction that would bar the land transfer but would not also require the Government to ban “the display of the Latin cross” on private land “in the area of Sunrise Rock in the Mojave National Preserve,” App. to Pet. for Cert. 146a — an implausible interpretation no one advocates.