Justice Breyer,
dissenting.
The District Court in this case entered a permanent injunction forbidding the Government to “permi[t] the display of the Latin cross in the area of Sunrise Rock in the Mojave National Preserve.” App. 39. Subsequently, Government authorities covered the cross with a plywood box so that it could not be seen. Congress then enacted a statute directing the Secretary of the Interior to convey to a private entity approximately one acre of land upon which the cross stood, presumably so that the cross could be displayed uncovered. The plaintiff, returning to the District Court, asked that court to “ ‘hold that the transfer violates the ... injunction.’ ” Buono v. Norton, 364 F. Supp. 2d 1175, 1177 (CD Cal. 2005) (quoting plaintiff’s motion). The court held that it did. Id., at 1182. And the question before us is whether the law permits the District Court so to interpret its injunction.
To answer this question we need not address any significant issue of Establishment Clause law. Because the Government has already lost the case, taken an appeal, and lost the appeal, we must take as a given the lower court’s resolution of the Establishment Clause question before the land transfer. That is to say, as the plurality points out, ante, at 713-714, we must here assume that the original display of the cross violated the Constitution because “the presence of the cross on federal land conveys a message” to a “reasonable observer” of governmental “endorsement of religion.” Buono v. Norton, 212 F. Supp. 2d 1202, 1216-1217 (CD Cal. 2002). See Travelers Indemnity Co. v. Bailey, 557 U. S. 137, 152 (2009) (once orders become final on direct review, they *761 are res judicata to the parties). For the same reason, we must here assume that the plaintiff originally had standing to bring the lawsuit. Ante, at 711-712; see also ante, at 729 (SCALIA, J., concurring in judgment); Travelers, supra, at 152 (orders are no less preclusive when the collateral attack is jurisdictional). And, as the plurality also points out, the plaintiff consequently has standing now to seek enforcement of the injunction. Ante, at 712-713; see also Allen v. Wright, 468 U. S. 737, 763 (1984).
Moreover, we are not faced with the question whether changed circumstances require modification of the injunction. The Government did not ask the District Court to modify it. In fact, the Government did not ask the District Court for any relief at all. Rather, it was the plaintiff who asked the District Court either (1) to “‘hold that the [land] transfer violates the current injunction/” or (2) to “‘modify that injunction to prohibit the land transfer because it violates the Establishment Clause.’” 364 F. Supp. 2d, at 1177 (quoting plaintiff’s motion). The District Court did the former, i. e., it interpreted the injunction as prohibiting the Government from transferring the land for purposes of displaying the cross. And having granted the plaintiff’s request to enforce the injunction, it dismissed the plaintiff’s alternative request to modify the injunction as moot.
Thus, as I said at the outset, the only question before us is whether the law permits the District Court to hold that the land transfer (presumably along with the subsequent public display of the cross) falls within the scope of its original injunctive order, an order that says the Government must not “permi[t] the display of the Latin cross in the area of Sunrise Rock in the Mojave National Preserve.” App. 39. In my view the law authorizes the District Court to do so.
The legal principles that answer the question presented are found not in the Constitution but in cases that concern the law of injunctions. First, the law of injunctions grants a district court considerable leeway to interpret the meaning *762 and application of its own injunctive order. Members of this Court have written that the “construction given to” an “injunction by the issuing judge ... is entitled to great weight.” Madsen v. Women’s Health Center, Inc., 512 U. S. 753, 795 (1994) (SCALIA, J., concurring in judgment in part and dissenting in part). And the Courts of Appeals have consistently held that district courts have considerable discretion in interpreting and applying their own injunctive decrees. See, e. g., JTH Tax, Inc. v. H & R Block Eastern Tax Servs., Inc., 359 P. 3d 699, 705 (CA4 2004); Alabama Nursing Home Assn. v. Harris, 617 F. 2d 385, 388 (CA5 1980). This principle is longstanding and well established, as reflected in a prominent treatise writer’s summary of the case law: “The court granting the injunction is necessarily invested with large discretion in enforcing obedience to its mandate, and . . . courts of appellate powers are exceedingly averse to interfering with the exercise of such judgment and discretion.” 2 J. High, Law of Injunctions §1458, pp. 1467-1468 (4th ed. 1905).
Second, a court should construe the scope of an injunction in light of its purpose and history, in other words, “what the decree was really designed to accomplish.” Mayor of Vicksburg v. Henson, 231 U. S. 259, 273 (1913). Courts have long looked to “the objects for which the [injunctive] relief was granted, as well as the circumstances attending it,” in deciding whether an enjoined party has complied with an injunction. 2 High, supra, § 1446, at 1455, and n. 68 (citing cases); see also John B. Stetson Co. v. Stephen L. Stetson Co., 128 F. 2d 981, 983 (CA2 1942). And they have long refused to “permit defendants to evade responsibility for violating an injunction, by doing through subterfuge a thing which is not in terms a violation, yet produces the same effect by accomplishing substantially that which they were enjoined from doing.” Stodder v. Rosen Talking Mach. Co., 247 Mass. 60, 68, 141 N. E. 569, 571 (1923).
*763 These two principles adequately support the District Court’s interpretation and application of the injunctive language at issue here. As an initial matter, the plain text of the injunction is reasonably read to prohibit the transfer. Right now, the cross is covered with a plywood box; after the transfer, the box will be removed and the cross will be displayed. The transfer thus “permits” the public “display” of the cross. Indeed, that is the statute’s objective.
Consideration of the injunction’s purpose points in the same direction. The injunction rested upon the District Court’s determination that the display of the cross “conveys a message of endorsement of religion” to “a reasonable observer” in violation of the Establishment Clause. 212 F. Supp. 2d, at 1216-1217. (As I have said, for present purposes we must assume that this is so.) The purpose of the injunction is to prevent the conveyance of such a message to the reasonable observer.
With that purpose in mind, consider the following facts that confronted the District Court when the plaintiff asked it to enforce the decree:
• The Government had designated the “white cross ... as well as a limited amount of adjoining [land]” as a national memorial. Pub. L. 107-117, § 8137(a), 115 Stat. 2278.
• The new statute directed the transfer of the “property . . . designated ... as a national memorial” to a private entity with an interest in maintaining the cross in its current location, in exchange for a parcel of land located elsewhere in the preserve owned by private individuals who have taken a similar interest in the cross. Pub. L. 108-87, §§ 8121(a) and (b), 117 Stat. 1100.
• The transfer was made “subject to the condition that the recipient maintain the conveyed property as a memorial,” and the property reverts to the United States if the Secretary determines that the recipient has failed to do so. § 8121(e), ibid.
*764 • After the transfer, the cross would sit on 1 acre of privately owned land in a 1.6 million acre national preserve, over 90% of which is federally owned. 212 F. Supp. 2d, at 1205.
• Congress had previously prevented the use of federal funds to remove the cross from its present location. Pub. L. 107-248, § 8065(b), 116 Stat. 1551; Pub. L. 106-554, §133, 114 Stat. 2763A-230.
The District Court considered the facts before it through the lens of the injunction's original purpose. See 364 F. Supp. 2d, at 1180 (explaining that the “[Government's continuing control over the Latin cross” and the involvement of private parties who “desir[e] its continued presence in the Preserve” “demonstrate]” that the transfer would not end “the [Government's apparent endorsement of a particular religion”); id., at 1182 (considering the historical context of the transfer statute); see also Buono v. Kemptkorne, 527 F. 3d 758, 783 (CA9 2008) (“carving out a tiny parcel of property in the midst of this vast Preserve . . . will do nothing to minimize the impermissible governmental endorsement” perceived by the reasonable observer). And it concluded that the land transfer would frustrate that purpose. See 364 F. Supp. 2d, at 1182 (the transfer would “keep the Latin cross atop Sunrise Rock without actually curing the continuing Establishment Clause violation”); see also 527 F. 3d, at 783 (finding that “[n]othing in the present posture of the case alters . . . earlier conclusions” regarding what a reasonable observer would perceive). In my view, this is a reasonable conclusion.
The injunction forbids the Government to permit the display of the cross on Sunrise Rock, and its basic purpose was to prevent a reasonable observer from believing that the Government had endorsed the cross. Under the circumstances presented to the District Court, the transfer would have resulted in such a display and might well have conveyed *765 such a message. Consequently, the District Court’s decision that the land transfer violated the injunction as written and intended was not an abuse of discretion. And that is what the Ninth Circuit properly held on appeal. What the Establishment Clause implications of the changed circumstances may be is a matter not before us. Cf. Frew v. Hawkins, 540 U. S. 431, 442 (2004) ("If the [enjoined defendant] establishes reason to modify the decree, the court should make the necessary changes; where it has not done so, however, the decree should be enforced according to its terms”).
Because my conclusion rests primarily upon the law of injunctions, because that law is fairly clear, and because we cannot properly reach beyond that law to consider the underlying Establishment Clause and standing questions, I can find no federal question of general significance in this case. I believe we should not have granted the petition for certiorari. Having granted it, the Court should now dismiss the writ as improvidently granted. Since the Court has not done so, however, I believe that we should simply affirm the Ninth Circuit’s judgment.
With respect, I dissent.