**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JEANNE E. CALDWELL,
                *Plaintiff-Appellant,*

                v.

ROY L. CALDWELL, in his official
capacity as Director of the
University of California Museum
of Paleontology; DAVID LINDBERG,
in his official capacity as Chair of
the Integrative Biology
Department of the University of
California-Berkeley; MICHAEL D.
PIBURN, in his official capacity as
Program Director for the National
Science Foundation,
                *Defendants-Appellees.*

No. 06-15771

D.C. No.
CV-05-04166-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
May 14, 2008—San Francisco, California

Filed October 3, 2008

Before: Betty B. Fletcher and Pamela Ann Rymer,
Circuit Judges, and Kevin Thomas Duffy,* District Judge.

*The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

14079

Opinion by Judge Rymer;
Concurrence by Judge B. Fletcher

## COUNSEL

Larry Caldwell, Quality Science Education for All, Roseville, California, Kevin T. Snider (argued), Pacific Justice Institute, Sacramento, California, for the plaintiff-appellant.

William J. Carroll (argued), Katharine Demgen, Morgenstein & Jubelirer LLP, San Francisco, California, Jeffrey A. Blair, Christopher M. Patti, University of California, Office of the General Counsel, Oakland, California, for defendants-appellees Roy L. Caldwell, Ph.D., and David Lindberg.

Robert M. Loeb, Lowell V. Sturgill Jr. (argued), United States Department of Justice, Civil Division, Washington, D.C., for defendant-appellee David Campbell.

## OPINION

RYMER, Circuit Judge:

We must decide whether Jeanne E. Caldwell, who asserts an interest in being informed about how teachers teach the theory of evolution in biology classes, has standing to pursue an Establishment Clause claim arising out of her offense at the discussion of religious views on the "Understanding Evolution" website created and maintained by the University of California Museum of Paleontology and funded in part by the National Science Foundation. She avers that the website endorses beliefs which hold that religion is compatible with evolutionary theory and disapproves beliefs, such as her own, that are to the contrary, thereby exposing her to government-endorsed religious messages and making her feel like an outsider. In a published opinion, the district court concluded that Caldwell's allegations state only a generalized grievance insufficient for injury in fact, and dismissed the complaint. *Caldwell v. Caldwell,* 420 F.Supp.2d 1102, 1007 (N.D. Cal.

2006). We also conclude that the harm asserted by Caldwell to her interest in being informed about the teaching of evolutionary theory is too generalized and remote to confer standing against the University of California faculty who administer the website and develop its content on behalf of the Museum of Paleontology. Caldwell's complaint against the Director of the National Science Foundation has become moot since her appeal was taken. Therefore, we affirm.

I

Caldwell's complaint pursuant to 42 U.S.C. § 1983 alleges that she is the parent of children in the California public schools, and is actively involved in elections and debates about the selection of instructional materials for science classes. She uses the website, "Understanding Evolution," to participate as an informed citizen in these elections, debates, and processes.

Roy L. Caldwell, Director of the University of California's (UC) Museum of Paleontology, and David Lindberg, Chair of the Integrative Biology Department at UC Berkeley, developed the website's content and administer it.[1] They applied for a grant from the National Science Foundation (NSF)[2] to create a website "to provide professional development opportunities to broaden and deepen the disciplinary knowledge and pedagogical skills of teachers, thus improving their ability to deliver rich and challenging science, mathematics and technology education to all students." NSF awarded the grant on May 10, 2001.

---

[1]Professor Lindberg and the Museum Director are sued in their official capacities as University employees, so we refer to them collectively as "UC."

[2]Michael D. Piburn was the NSF Program Director at the time. As he was sued in his official capacity, we substitute the current Program Director, David Campbell.

The website consists of some 840 pages. Its stated purpose is:

> Understanding Evolution is a non-commercial, education website, teaching the science and history of evolutionary biology. This site is here to help you understand what evolution is, how it works, how it factors into your life, how research in evolutionary biology is performed, and how ideas in this area have changed over time.

http://evolution.berkeley.edu. The website has a number of subsites, one of which is "Understanding Evolution for Teachers." This subsite in turn is organized into a number of sections, including one called "Misconceptions" that addresses misconceptions about evolution and the mechanisms of evolution. Caldwell's complaint focuses on a page titled "Misconception: 'Evolution and Religion are Incompatible.' " http://evolution.berkeley.edu/evosite/misconceps/IVA andreligion.shtml. Beneath text elaborating the point[3] is a cartoon that depicts a smiling scientist in a lab coat holding a fossil skull shaking hands with a smiling cleric in a collar holding a book marked with a small cross.

---

[3]The page has been edited over time, but in the version attached to the complaint, opened with text that stated in full:

### Misconception: "Evolution and religion are incompatible."

**Response:** Religion and science (evolution) are very different things. In science (as in science class), only natural causes are used to explain natural phenomena, while religion deals with beliefs that are beyond the natural world.

The misconception that one has to choose between science and religion is divisive. Most Christian and Jewish religious groups have no conflict with the theory of evolution or other scientific findings. In fact, many religious people, including theologians, feel that a deeper understanding of nature actually enriches their faith. Moreover, in the scientific community, there are thousands of scientists who are devoutly religious and also accept evolution.

Caldwell alleges that the site endorses the religious viewpoint that religious beliefs are limited to the spiritual world; that the theory of evolution is not in conflict with properly understood Christian religious beliefs; that the "Misconception" page links to a National Center for Science Education (NCSE) web page that includes statements by many religious organizations in support of the endorsed position that most Christian and Jewish religious groups have no conflict with the theory of evolution; and that the site seeks to proselytize public school students and the public to adopt these viewpoints. The complaint avers that Caldwell is offended by the government's endorsement of religions and religious denominations when she visits the site; that people such as she who believe that their religious belief is incompatible with evolutionary theory are made to feel like outsiders by the State of California and the United States; and that she has been exposed to the government-endorsed religious messages to her harm because UC has opened the site to the general public. Caldwell requests an injunction restraining publication of the website and a judgment declaring that inclusion of the religious and anti-religious materials in the Understanding Evolution website is unconstitutional.

UC and NSF moved to dismiss for lack of standing. The district court held that Caldwell failed to make out taxpayer standing with respect to both the federal and state parties, an issue that is not appealed. Relying on *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982), the court also found that Caldwell's allegations constitute no more than the generalized grievances of one who observes government conduct with which she disagrees. Accordingly, it dismissed the complaint on the ground that Caldwell has not shown injury in fact.

Meanwhile, Caldwell had moved at oral argument for leave to amend her complaint to include additional allegations that the Understanding Evolution website is aimed at the general public as well as at K-12 teachers, and that UC has expressly

invited members of the general public to visit and use the website. Asked to clarify its dismissal order in this respect, the court explained that it denied leave to amend because the additional allegations would have no bearing on whether Caldwell adequately alleged cognizable injury in fact given that the court's decision was based on the understanding that UC's website was always open to the public.

Caldwell timely appealed.

## II

**[1]** We first consider the status of Caldwell's action against NSF because mootness has been suggested. Paragraph 16 of the complaint alleges that the grant "runs through October 31, 2006," and ¶ 19 avers: "The grant started on April 1, 2001, and expires on October 31, 2006." The government represents that this is so, i.e., the grant in fact expired on October 31, 2006, and that no funding has occurred since then or is likely to occur in the future. *See Chandler v. Miller*, 520 U.S. 305, 313 n.2 (1997). Caldwell does not seriously contend otherwise. For these reasons, the appeal as to NSF is moot.

## III

Next we address Caldwell's contention that she could have added amendments to her complaint that would have sufficiently pleaded injury in fact, as well as meritorious Establishment Clause claims. There is no issue as to the latter because the merits were neither reached by the district court nor raised on appeal. As to standing, the proffered amendments would be meaningless because ¶ 26 of the complaint already alleges that UC opened the Understanding Evolution website to the public. Both the district court, and we, take it as true for purposes of whether dismissal is proper that, as pled, the website is public.

IV

The heart of Caldwell's position is that *Valley Forge*, embraced as the controlling authority by UC and the district court, is inapposite and that the "cross" cases, exemplified by *Buono v. Norton*, 371 F.3d 543 (9th Cir. 2004), provide the more apt analogy. *See also Separation of Church and State Comm. v. City of Eugene*, 93 F.3d 617 (9th Cir. 1996) (*SCSC*); *Ellis v. City of La Mesa*, 990 F.2d 1518 (9th Cir. 1993). Caldwell submits that, like the plaintiffs in those cases, she also came into direct contact with a religious symbol on property owned by the government which she finds offensive; and that, just as the inability of plaintiffs in those cases freely to use public land sufficed as injury in fact, so too should it suffice that she is inhibited from freely using a government resource without running into religious symbols and theological statements which offend her.

[2] A party has Article III standing if she suffers an "injury in fact," the injury is fairly traceable to the challenged conduct, and the injury is likely to be redressed by a favorable judicial decision. *Buono*, 371 F.3d at 546; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Even so, "the Court has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge*, 454 U.S. at 474-75 (quoting *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975)).

[3] In *Valley Forge*, Americans United for Separation of Church and State along with four of its employees, based in the Washington, D.C. area, learned through a news release that surplus government property had been transferred to Valley Forge Christian College in Chester County, Pennsylvania. They challenged the transfer on Establishment Clause grounds. The Court held that Americans United were without standing as taxpayers, and had not established standing by vir-

tue of an injury in fact. Elaborating the requirement for injury in fact, the Court observed that it is not enough for a party to claim that the Establishment Clause has been violated; "[s]uch claims amount to little more than attempts to employ a federal court as a forum in which to air . . . generalized grievances about the conduct of government." *Id.* at 483 (internal quotations and citations omitted). Thus, the complaint of Americans United was deficient because "[t]hey fail to identify any personal injury suffered by them *as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." *Id.* at 485-86 (emphasis in original).[4]

In *Buono*, the plaintiff, a retired employee of the Park Service who had been Assistant Superintendent of the Mojave National Preserve and regularly visited it, complained that a Latin cross atop Sunrise Rock violated the Establishment Clause and was offensive to him. He regarded the cross as offensive because it was on federal property — not because of the cross as such — and the district court found that Buono would tend to avoid Sunrise Rock as long as the cross remained standing. We held that *Valley Forge* "drew a distinction between abstract grievances and personal injuries, not ideological and religious beliefs," 371 F.3d at 547, and that Buono's inhibition from freely using the Preserve sufficed as

---

[4]Having so concluded, the Court reiterated that standing may be predicated on noneconomic injury, citing *United States v. SCRAP*, 412 U.S. 669 (1973). *SCRAP* recognized that plaintiffs who used natural resources for recreational and aesthetic purposes that would be adversely affected by a municipal fee had standing, as they alleged specific and perceptible harm that distinguished them from other citizens who had not used these resources. In *Valley Forge*, however, the Court "simply [could not] see . . . *injury* of *any* kind, economic or otherwise." *Id.* at 486 & n.23 (emphasis in original).

injury in fact[5] and constituted "personal injury suffered . . . *as a consequence* of the alleged constitutional error." *Id.* (emphasis in original) (quoting *Valley Forge*, 454 U.S. at 485).

Since *Buono*, we have also considered standing to pursue an Establishment Clause challenge in the context of a government seal. In *Vasquez v. Los Angeles County*, a county employee was forced to have daily contact with a county seal from which a cross had been removed and which he regarded, for this reason, as an offensive anti-religious symbol. 487 F.3d 1246, 1249 (9th Cir. 2007). We held that Vasquez had standing even though he had taken no affirmative steps to avoid areas where the symbol was located; we did not think it necessary to require a change of behavior — in his case, to quit his job — in order to vindicate spiritual harm from unwelcome direct contact with an allegedly offensive religious (or anti-religious) symbol. Nor did we think Vasquez's contact with the symbol too tenuous, indirect, or abstract to give rise to Article III standing given that he held himself out as a member of the community where the seal was located, as someone forced into frequent regular contact with it, and as someone directly affected by unwelcome direct contact with a symbol that was pervasively on display. We thought *Valley Forge* distinguishable in this respect, because the plaintiffs there were physically removed from the allegedly unconstitutional conduct, and because Vasquez had alleged more than "a mere abstract objection" to removal of the cross from the county seal. *Id.* at 1251 (quoting *Suhre v. Haywood County*, 131 F.3d 1083, 1086 (4th Cir. 1997)).

Caldwell's situation does not fit neatly into a place already

---

[5]We had so held before in *SCSC*, 93 F.3d at 619 n.2, and *Ellis*, 990 F.2d at 1523. In each, parties offended by the presence of a cross on government property alleged that the cross prevented them from unreservedly using the area where the cross was installed. *See Buono*, 371 F.3d at 547 (citing both cases).

staked out along the continuum of Establishment Clause standing. She is neither so removed from the conduct challenged as the plaintiffs were in *Valley Forge*, nor so close as the plaintiff was in *Vasquez*. Her connection to the writing on the website is more tenuous than Buono's to the Preserve where the offending symbol was a Latin cross that was permanently installed on a top of a hill, while her complaint is more abstract and her contact less forced than Vasquez's.

It is instructive to compare *School District of Abington v. Schempp*, 374 U.S. 203 (1963), and *Doremus v. Board of Education*, 342 U.S. 429 (1952), as the Supreme Court did in *Valley Forge*. 454 U.S. at 486 n.22. *Schempp* is the source of the rule which informed our decision in the seal case, that unwelcome direct contact with an allegedly offensive religious or anti-religious symbol, suffices for Article III standing. *See Vasquez,* 487 F.3d at 1251-53. In *Schempp*, children enrolled in public school together with their parents objected to a Bible reading in the classroom that was mandated by state law. The Court found the interests asserted sufficient for standing because these plaintiffs were "directly affected by the laws and practices against which their complaints are directed." *Schempp*, 374 U.S. at 224 n.9. This contrasts with *Doremus*, in which the same issues were raised but in which parents lost standing to sue when their children were graduated. 342 U.S. at 432-33. *See also Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12-18 (2004) (holding that parent whose custodial rights were unclear lacked prudential standing to pursue an Establishment Clause claim aimed at recitation of the Pledge of Allegiance in his daughter's classroom). As the Court explained in *Valley Forge*, "[t]he plaintiffs in *Schempp* had standing, not because their complaint rested on the Establishment Clause — for as *Doremus* demonstrated, that is insufficient — but because impressionable schoolchildren were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them." 454 U.S. at 486 n.22.

**[4]** We conclude that Caldwell's asserted interest — informed participation as a citizen in school board meetings, debates, and elections, especially with respect to selection of instructional materials and how teachers teach the theory of evolution in biology classes in the public schools — is not sufficiently differentiated and direct to confer standing on her to challenge the University of California's treatment of religious and anti-religious views on evolution. An interest in informed participation in public discourse is one we hold in common as citizens in a democracy. While people inside and outside the academy may (and do) take different views in the ongoing debate over whether science and religion may coexist, Caldwell's offense is no more than an "abstract objection" to how the University's website presents the subject. The court must refrain from becoming "a 'judicial version[ ] of college debating forums." *Vasquez*, 487 F.3d at 1251 (quoting *Valley Forge*, 454 U.S. at 473). That she is the parent of school-age children makes her position no less remote, for her connection to the University of California website is not similar to the relationship in *Schempp* between parents whose children are directly exposed to unwelcome religious exercises in the classroom and the school district. Accordingly, we believe there is too slight a connection between Caldwell's generalized grievance, and the government conduct about which she complains, to sustain her standing to proceed.

AFFIRMED.

---

FLETCHER, Circuit Judge, concurring:

I concur in the majority opinion. I write separately to elaborate more fully why Caldwell lacks standing.

Caldwell's injury is limited to "the psychological consequence presumably produced by observation of conduct with which one disagrees." *Valley Forge Christian Coll. v. Ameri-*

*cans United for Separation of Church and State, Inc.*, 454 U.S. 464, 485 (1982). Caldwell does not allege that her children's school has incorporated the offending views expressed on the UE website into its science curriculum or that her children's biology teacher articulated them in response to a student's question. Thus, there is no allegation that Caldwell's children or Caldwell herself were "directly affected" by the offensive content of the UE website. *Cf. School District of Abington v. Schempp*, 374 U.S. 203, 224 n.9 (1963) (holding that public school pupils and their parents who objected to Bible reading in school had standing because they were "directly affected by the laws and practices against which their complaints [were] directed").

Caldwell also does not allege that her contact with the offensive views expressed on the UE website was "frequent and regular" or "unwelcome." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1251, 1252 (9th Cir. 2007). There is no allegation that Caldwell had any reason to visit the offending web page more than once. *Cf. id.* at 1248, 1249, 1253 (holding that county resident and employee who had daily, unwelcome contact with allegedly anti-religious county seal had standing). Nor did the single offending web page prevent Caldwell from freely using the rest of the UE website: the site comprises approximately 840 pages, each of which can be viewed without having first viewed the offending page. *Cf. Buono v. Norton*, 371 F.3d 543, 547 (9th Cir. 2004) (holding that plaintiff who was "unable to freely use" the area of the Mojave National Preserve around a Latin cross because of the government's allegedly unconstitutional actions had standing (internal quotation marks, editorial marks, and citation omitted)).

Moreover, while "[w]e have repeatedly held that inability to unreservedly use public land suffices as injury-in-fact," *id.* (citation omitted), I am not persuaded that inability unreservedly to use a government-run website necessarily also suffices as injury-in-fact. Accessing and leaving a website is quick and

easy, and the alleged offense from the content of one page out of 840 that one need not read or tarry over is fleeting at best. While in certain cases the inability to access a government-run website due to allegedly unconstitutional content may well confer standing, I conclude that Caldwell's injury is too de minimis to satisfy the standing doctrine's core aim of "improving judicial decision-making by ensuring that there is a specific controversy before the court and that there is an advocate with sufficient personal concern to effectively litigate the matter." *Vasquez*, 487 F.3d at 1250 (internal quotation marks, editorial marks, and citation omitted).